The People agt. Vail.

The attachment must be vacated, with costs.

---

## RENSSELAER OYER AND TERMINER.

### The People agt. D. Thomas Vail.

*Perjury — Official sworn reports — Power of state officers to prescribe the form and contents and mode of verification of corporate reports — Report of president of bank to superintendent of banking department — what should contain.*

The executive and administrative officers of the state have power to prescribe, pursuant to statute, the form, contents and mode of verification of corporate reports, such as are annually required by law.

Under the statute (*Laws of* 1843, *chapter* 218, *section* 3, *as amended by chapter* 419, *Laws of* 1847) the superintendent of the banking department may call upon a banking institution to state, in its report, in a general way, the largest loan made to "any one individual, firm or corporation," and such information is necessary to show its "condition." The act requires something more than a mere statement of the sum total of all

its "loans and discounts." Some thing which will show the "condition" of the bank in that respect, and the maximum of a loan to a single individual, firm or corporation, is within the plain requirements of the law.

The superintendent of the banking department has the right to require the report of the bank to show the "aggregate of loans upon paper made, accepted or indorsed by directors individually or as members of firms." And this includes liabilities by the directors to the bank, whether matured or not.

On a motion to quash an indictment, it is not necessary that the defendant should be present in court during the argument. A preliminary objection that the presence of the defendant, during the argument, should be required, will not be sustained.

*March*, 1879.

*Before* WESTBROOK, *J. S. C.*, BUTTS *and* SLADE, *Justices.*

MOTION to quash an indictment charging perjury.

*R. A. Parmenter* and *Esek Cowen*, for defendant.

*Mr. Foster*, district attorney, opposed.

WESTBROOK, *J.*— The defendant was the president of the Merchants and Mechanics' Bank of Troy. He is charged by an indictment, found by the grand jury of Rensselaer county, in November, 1878, with having committed perjury in the quarterly report made in behalf of the bank to the superintendent of the banking department, in September, 1878, in two particulars: first, in stating that the "largest aggregate of loans to any one individual, firm or corporation" was $49,221.55; and, second, in declaring the "aggregate of loans upon paper, made, accepted, or indorsed by directors individually, and as members of firms," was $42, 004.21.

By chapter 218 of the Laws of 1843, and section 3 thereof, as amended by chapter 419 of the Laws of 1847, the quarterly report of the bank, "which report shall be made on the oath of the president and cashier" must "contain a true statement

of · the condition of the bank     *     *     *     making such report, before the transaction· of any business on the morning of the day     *     *     *     next preceding the date of such report in respect to the following items and particulars, to wit : Loans and discounts     *     *     * due from the directors of the bank, or banking association, making the report," &c., &c.

By statute (2 *Edmond's ed.*, *p.* 701., *sec.* 1), when an oath is one of the character upon which the present alleged perjury is predicated, such oath or affirmation must be one "required by law," and it is claimed by counsel for the accused that the law prescribing what the bank report must contain, does not authorize the superintendent of the banking department to demand answers upon the points on which perjury has been assigned, and that, consequently, the indictment must fall. The point taken renders the examination of each of the alleged perjuries necessary.

First, could the bank be required to state in its report the largest loan to " any one individual, firm or corporation ? " The counsel ·for the defendant argue it could not, and that all that the law requires is the gross aggregate of loans and discounts, and that no particulars thereof can be ordered. If this position is sound, is the letter of the statute, to say nothing of its spirit, complied with ? The act is imperative ( " shall " is the word used ) in requiring the report to " contain a true statement of the *condition* of the bank " as to its " loans and discounts." A mere statement of the total of all " loans and discounts," without any thing more, would not give " a true statement of the condition of the bank " in that particular.

The whole sum might be loaned to a single individual, who was utterly insolvent, and in that case, with a report giving only the general aggregate of all loans, the light, which the public ought to have, and which the law evidently contemplates, would be withheld. Without deciding how much of a detailed statement as to its " loans and discounts " a bank

may be required to make, we are clear in our judgment, that the superintendent of the banking department may call upon an institution to state in its report, in a general way, the largest loan made to "any one individual, firm or corporation," and that such information is necessary to show its "condition." The history of banking institutions, which have been wrecked by large loans to single individuals, or corporations, or firms, shows how vital the information sought actually was. It is possible that inquiries might be made, which would be so searching and thorough as to be beyond the intent of the statute, which was designed to secure a report for publication, but we cannot but think, that the act both in its letter and spirit requires something more than a mere statement of the sum total of all its "loans and discounts." Something which will show the "condition" of the bank in that respect, and the maximum of a loan to a single individual, firm or corporation, certainly is within the plain requirements of the law.

Second. Had the superintendent of the banking department the right to require the report of the bank to show the "aggregate of loans upon paper made, accepted or indorsed by directors individually or as members of firms?"

If the answer to this question depended upon the same provisions of the section of the act, upon which it has been already adjudged that the former requirement was warranted, we should hold that the superintendent had not transcended his power. The "condition" of the bank as to its "loans and discounts" would be but very imperfectly known, by a statement of the total of its loans, and the largest sum owing by an individual, firm or corporation, unless information was also imparted as to the indebtedness of directors. This is so palpable, and the evil to be guarded against, the absorbtion of an entire bank capital by one or more of its officers, so frequent, that no argument is needed to show the wisdom of demanding this information.

The section, however, still more plainly calls for just the statement which was made. It requires the sum "*due* from

the directors of the bank or banking association making the report" to be given therein. Language plainer than this could not have been employed. It cannot be plausibly argued, if the objects and purposes of the act be considered, that the word "*due*" is used in its narrow sense so as to require a statement only of such liabilities as had matured. It ought to have no such interpretation, for the public would then never know how officers were using the institution. The word, evidently, is used in its larger sense to signify and cover liabilities by the directors to the bank, whether matured or not. This (*see Webster's Dictionary*) is the general meaning of the word. And if this interpretation be given to it in the law, we can see the wisdom of the provision, which is not apparent if its meaning be limited to obligations and liabilities which have matured and are immediately payable.

Our conclusion is clear, that the motion to quash cannot be granted. A trial may show the indictment to be untrue, but on this application its allegations must each and all be regarded as verities. The defendant is charged with making willfully false statements under oath, in regard to two matters, upon which the superintendent of banking required information. The application to quash is made upon the assumption, that the officers asked more than the law allowed. We are clear that he did not, and hence the motion cannot prevail. From the statements of counsel, however, it is quite possible, when the evidence shall show precisely what the superintendent required, that the indictment cannot be maintained. That evidence is not before us. We have only the written accusation, the indictment, and assuming its truth, as we must upon this motion, we can find no cause to quash it.

As we have concluded to deny the motion made by defendant's counsel, it is scarcely necessary to pass upon the preliminary objection taken by the district attorney, that the presence of the defendant in court during the argument should be required. It may not be amiss, however, to say that we know of no imperative rule which requires the presence of

The People agt. Vail.

the accused during an argument of a motion.   If there is, then on review of an acquittal or conviction in an appellate tribunal, he should also be personally present.   The trial of a party for a felony during his absence would certainly be improper, for no one should be tried and convicted without being brought face to face with his accusers and the witnesses, but there is no reason, of which we are aware, making necessary the presence of the defendant in the court room upon a motion to quash an indictment.

Doubtless, the court might refuse to hear it in his absence, if for any cause it saw fit to do so, but when the party asks to have the motion heard in his absence he can have no ground of complaint if the court does precisely what he asks.

The strictness of ancient rules has been very much relaxed ( *Wharton's Criminal Law* [*7th edition*], *vol. 3, sec.* 2798).

And as the accused, if the decision had been in his favor, would not have raised the question of his absence, and as the public could lose no rights in this case by hearing it, the motion was heard and has been considered and decided upon its merits.

In conformity with the stipulation the clerk will enter upon the minutes, as of the day of the argument, a denial of the motion to quash the indictment giving the defendant an exception to the decision ordering it.

Opinion concurred in by justices BUTTS and SLADE.