(57 App. Div. 257.)

## PEOPLE v. COLLINS.

(Supreme Court, Appellate Division, Third Department.    January 9, 1901.)

1. PERJURY—OATH—JURISDICTION OF JUSTICE—CRIMINAL PROSECUTION.

The maker of a note was arrested for larceny in obtaining money thereon, but, when brought before the magistrate, such charge had been withdrawn, and he was then arrested on the charge of forging the indorsers' names thereon, to which he pleaded, but made no objection to any informality in the proceeding, and defendant, whose name appeared on the note as indorser, was sworn as a witness, as authorized by Code Cr. Proc. § 188, and testified that his name was forged. *Held*, in a prosecution of defendant for perjury, that the court had jurisdiction in the forgery prosecution, and therefore defendant's oath therein was not extrajudicial.

2. SAME—EVIDENCE—HANDWRITING—EXPERT—COMPETENCY.

Where, in a prosecution of the indorser of a note for perjury in falsely swearing, in a prosecution of the maker for forgery, that his indorsement of the note was forged, a witness testified that he had seen defendant write his name before, and that the name indorsed on the note was in his handwriting, but he did not base his opinion on his familiarity with defendant's signature from seeing him write it, but by comparison with signatures which he supposed were the genuine signatures of defendant, though he did not know such to be the fact, it was error to refuse defendant's motion to strike out such evidence, since the witness had not shown himself qualified to give it.

Appeal from Chenango county court.

Wallace W. Collins was convicted of perjury, and he appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Wade Stephenson, for appellant.
Woodworth B. Matterson, Dist. Atty., for the People.

MERWIN, J.    The charge against the defendant was that on or about the 16th day of March, 1896, he committed the crime of perjury in falsely testifying that he did not indorse a certain promissory note for $150, dated December 9, 1895, made by A. M. Burleson, payable to the order of W. W. Collins, the defendant, three months after date, at the First National Bank of Earlville; and which purported to be indorsed by W. W. Collins and by C. K. Warren. It appears that such a note was negotiated by Burleson at the bank named, and that when, upon its nonpayment, it was brought to the attention of Collins, he denied ever having indorsed it.    Thereupon a criminal proceeding was instituted before George Bergen, a justice of the peace, against Burleson, first for grand larceny, and then for forgery.    The justice is dead.    From his docket it appears that Burleson was arrested upon a charge of forgery, and

brought before the magistrate; that he put in a plea of not guilty, and thereupon the magistrate immediately proceeded to an examination, Collins being one of the witnesses examined. The testimony or deposition of Collins, as then and there taken and signed by him, indicates that he then testified that he did not indorse the note; that the signature purporting to be his was not his handwriting, and that he never wrote it. The indictment here is based upon the allegation that such testimony was false. It is claimed by the defendant that the justice did not have jurisdiction of the proceeding in which this testimony was given, and that, therefore, the oath administered to the defendant was extrajudicial. The information, as originally presented to the magistrate by one Clark, the cashier of the bank, charged the crime of grand larceny. The name of the person charged, according to the printed record before us, is Ansel M. Burdick. In the original, however, which is handed up, the name is Burleson. At the time the information was presented, the magistrate took the depositions of Clark, Collins, and Warren, from which facts appeared tending to show that the crime of forgery had been committed by Burleson. A warrant seems to have been issued against Burleson in the first place for grand larceny in obtaining from the bank the money on the forged note. Afterwards a warrant for forgery was issued, and, when Burleson was brought before the magistrate on the first warrant, he was informed that it had been withdrawn, and he was then arrested on the warrant for forgery, put in his plea, making no objections to any informality in the proceeding, and then the examination proceeded in which Collins gave the testimony in question. By section 188, Code Cr. Proc., and subsequent sections it is provided that when the defendant is brought before a magistrate upon an arrest, either with or without warrant, on a charge of having committed a crime, certain proceedings shall be taken, and witnesses examined. In pursuance of those provisions, Collins was examined as a witness. The magistrate had jurisdiction of the subject-matter and of the defendant in the proceeding. Collins was in reality the moving party. The contention that the oath was extrajudicial is not, we think, well taken.

Upon the trial under review, Mr. Clark, the bank cashier, was called as a witness for the people, and during the course of his direct examination the following occurred:

"Q. Are you familiar with the writing of W. W. Collins? A. I have seen considerable of it. I have seen him write his name. Q. What do you say,— is that signature in his handwriting [referring to the signature in question]? (Objected to as immaterial, incompetent, and improper; the witness not shown competent. The Court: 'The objection is overruled.' Exception taken.) A. To the best of my judgment, it is."

## Upon his cross-examination the following occurred:

"Q. On your knowledge of Mr. Collins' handwriting, as you have seen him write, would you say that [referring to the signature in question] was his genuine handwriting? A. I have not seen him write enough to base any opinion. * * * Q. On what other grounds do you base your opinion aside from the amount you have seen him write? A. I have had signatures supposed to be Mr. Collins' genuine admitted signatures which I compared. I did not know they were his signatures. Q. You don't know they were gen-

uine signatures? A. No, sir. Q. You base your opinion partly on those signatures that you supposed were genuine? A. Yes, sir."

The counsel for the defendant then moved to strike out the evidence of the witness in regard to Mr. Collins' handwriting upon the ground that it was inadmissible and improper, and the proper foundation for it had not been laid. The court denied the motion, and the defendant excepted. It is claimed by the defendant—correctly, we think—that the court erred in denying the motion to strike out. The witness did not show himself qualified to testify as to the genuineness of the handwriting, either from his own knowledge or from comparison with signatures known to him to be genuine, or admitted to be so. See People v. Severance, 67 Hun, 182, 22 N. Y. Supp. 91; People v. Dorthy, 50 App. Div. 44, 63 N. Y. Supp. 592. The evidence was material, and from the position of the witness it may have had controlling effect with the jury. The error was, we think, of sufficient importance to require a reversal.

When the case was moved for trial, the defendant moved upon affidavits to put the case over the term, upon the ground of the absence of a witness, who was shown to be sick and unable to attend. The defendant claims the motion ought to have been granted. The witness absent was Warren, whose name appeared as indorser on the same note, but whose signature was claimed to have been also forged. The situation of Warren to the case was evidently such that his testimony might be quite material for the defendant. The defendant, in substance, complied with the requisites on such an application as laid down in People v. Jackson, 111 N. Y. 362, 19 N. E. 54. The disposition of such an application depends largely on the discretion of the court. Still it seems to us that under the circumstances it might well have been granted.

Judgment and order reversed, and new trial granted. All concur.